# In the United States Court of Federal Claims

No. 23-1276T

(Filed: December 11, 2025)

| | |
|---|---|
| **JOHN T. KENNEDY,** | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

*John T. Kennedy*, Porto Alegre, Rio Grande do Sul, Brazil, *pro se*.

*Joseph R. Longenecker*, Tax Division, United States Department of Justice, Washington, D.C., for Defendant. With him on the briefs were *David A. Hubbert*, Deputy Assistant Attorney General, *David I. Pincus*, Chief, Court of Federal Claims Section, and *G. Robson Stewart*, Assistant Chief, Court of Federal Claims Section.

### OPINION AND ORDER

***SOLOMSON*, Chief Judge.**

This case concerns Treasury checks the Internal Revenues Service ("IRS") allegedly mailed to a United States post office box ("P.O. box") belonging to Plaintiff, Mr. John T. Kennedy, while he was living overseas. Mr. Kennedy alleges that while he was living in Brazil, Defendant, the United States — acting by and through the United States Postal Service ("USPS") — closed his P.O. box without his consent and thus improperly returned the Treasury checks to the IRS, depriving him of over $30,000. Mr. Kennedy's second amended complaint asks this Court for "judgment for damages, interest, costs, attorney's fees and such other relief this court deems appropriate." ECF No. 24 ("Compl.") ¶ 65. For the reasons explained below, the Court grants the government's motion to dismiss Mr. Kennedy's complaint, ECF No. 26 ("Def. MTD"), with respect to all but one of Mr. Kennedy's claims. But because Mr. Kennedy has

sufficiently pled a breach of contract claim, the government's motion with respect to Count VII is denied.

**I.     FACTUAL AND PROCEDURAL HISTORY[1]**

Mr. Kennedy is a United States citizen currently residing in Brazil, where he has lived since 2019. According to Mr. Kennedy, in 2014, he "was found to be permanently and totally disabled and was awarded social security benefits." Compl. ¶ 1. At some point after 2014, the IRS placed a levy on Mr. Kennedy's benefits to collect unpaid taxes. *Id.* at ¶ 2. In January 2019, during a phone call with an IRS employee, Mr. Kennedy was allegedly told that the IRS agreed to lift the levy "because it created an economic hardship and the taxes were uncollectable." *Id.* at ¶¶ 3, 26. The Social Security Administration ("SSA"), however, continued to levy Mr. Kennedy's taxes until July 2019. *Id.* at ¶¶ 4–7.

In an attempt to rectify the situation, Mr. Kennedy had two more phone calls with the IRS between January and July 2019. Compl. ¶ 27. During these phone calls, the IRS allegedly agreed to issue Mr. Kennedy checks for $3,467.80 and $1,733 — each of which constituted "part" of the funds the SSA mistakenly withheld after the levy had been lifted. *Id.* at ¶¶ 5–6. The IRS sent the checks to Mr. Kennedy's P.O. box in Florida. Mr. Kennedy did not collect the checks, though, because he was in Brazil. *Id.* at ¶ 8.

In July 2021, Mr. Kennedy returned to Florida and discovered that his P.O. box had been closed, and that the Treasury checks had been returned by the USPS to the government. Compl. ¶¶ 9, 58. That same month, Mr. Kennedy called the IRS to inquire about the returned checks and learned about the existence of a *third* check — in the amount of $36,111 — that had been issued in December 2010. *Id.* at ¶ 39. According to Mr. Kennedy, all three checks had been returned and voided while he was in Brazil. The IRS instructed him to file IRS Form 3911 ("Taxpayer Statement Regarding Refund") for the lost checks. *Id.* at ¶ 40. Mr. Kennedy apparently did as he was instructed; the forms were attached to his complaint. *Id.* at Exhibits A, B, C.

---

[1] All facts are taken from Mr. Kennedy's Second Amended Complaint, ECF No. 24. All page numbers reference the PDF numbers in the headers of the ECF documents. For purposes of Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims, this Court assumes all non-conclusory facts alleged in the operative complaint are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On August 4, 2023, Mr. Kennedy filed a complaint in this Court. ECF No. 1. In the subsequent months, this Court granted Mr. Kennedy leave to file two amended complaints, the second time observing that because "this Court generally holds pro se plaintiffs' pleadings to 'less stringent standards,' the Court will afford Mr. Kennedy one more bite at the apple." ECF No. 22 (citation omitted). Mr. Kennedy filed his second amended complaint on July 15, 2024. ECF No. 24. The government subsequently filed its third motion to dismiss, ECF No. 26, Mr. Kennedy filed his response, ECF No. 30 ("Pl. Resp."), and the government filed its reply. ECF No. 34 ("Def. Rep.").

## II. JURISDICTION AND STANDARD OF REVIEW

The government moves to dismiss Mr. Kennedy's second amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") for, respectively, lack of jurisdiction and failure to state a claim upon which relief can be granted. Def. MTD at 10.

### A. RCFC 12(b)(1)

Mr. Kennedy is proceeding *pro se*, and this Court generally holds a *pro se* plaintiff's pleadings to "less stringent standards." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The Court, however, "may not . . . take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only." *Kelley v. Sec'y of Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). In other words, even a *pro se* plaintiff "bears the burden of proving that the Court of Federal Claims possesse[s] jurisdiction over his complaint." *Sanders v. United States*, 252 F.3d 1329, 1333 (Fed. Cir. 2001); *see also Colbert v. United States*, 617 F. App'x 981, 983 (Fed. Cir. 2015) ("No plaintiff, pro se or otherwise, may be excused from the burden of meeting the court's jurisdictional requirements.").

Generally, "[t]he jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act provides this Court with jurisdiction over "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004). The Tucker Act, however, "does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir.

3

2005) (en banc). Rather, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Id*. (first citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983); then citing *United States v. Testan*, 424 U.S. 392, 398 (1976)). Moreover, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *Mitchell*, 463 U.S. at 216. With respect to "money-mandating" claims, the plaintiff must identify a law that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009, (Ct. Cl. 1967).

Regarding contract claims specifically, our appellate court, the United States Court of Appeals for the Federal Circuit, "has 'held that jurisdiction under [the Tucker Act] requires no more than a *non-frivolous* allegation of a contract with the government.'" *Perry v. United States*, 149 Fed. Cl. 1, 11 (2020) (quoting *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011)), *aff'd*, 2021 WL 2935075 (Fed. Cir. July 13, 2021). The Federal Circuit explained in *Gould, Inc. v. United States* that when a plaintiff brings non-frivolous allegations of a contract, "the proper basis for such a dismissal, if it is in fact warranted, is a failure to state a claim upon which relief can be granted." 67 F.3d 925, 930 (Fed. Cir. 1995). The test to determine whether a plaintiff's complaint proffers non-frivolous allegations is whether the "asserted basis of jurisdiction is not pretextual, *i.e.*, as long as the jurisdictional ground asserted in the complaint does not 'appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction.'" *Lewis v. United States*, 70 F.3d 597, 603 (Fed. Cir. 1995) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). "Thus, 'the question of whether a contract exists' generally appears *not* to be 'a jurisdictional one,' unless, however, a plaintiff does 'not plausibly allege the existence of a contract.'" *Perry*, 149 Fed. Cl. at 12 (quoting *Engage Learning*, 660 F.3d at 1355).

In the absence of subject-matter jurisdiction, the Court "must dismiss the action." RCFC 12(h)(3); *see also Kissi v. United States*, 493 F. App'x 57, 58 (2012) ("If the Court of Federal Claims determines that it lacks subject matter jurisdiction, it must dismiss the claim." (citing RCFC 12(h)(3))).

### B.  RCFC 12(b)(6)

When considering a motion to dismiss a complaint for failure to state a claim upon which the Court may grant relief pursuant to RCFC 12(b)(6), the Court accepts as true all factual allegations — but not legal conclusions — contained in a plaintiff's complaint. *See*

4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  For a plaintiff's complaint to survive a motion to dismiss, the Court — viewing the facts in the light most favorable to the plaintiff — must conclude that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff may not simply plead "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (citations omitted).  The Court must dismiss a complaint "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

### III.  DISCUSSION

In Mr. Kennedy's second amended complaint, he alleges eight counts against the United States, stemming from three underlying legal theories of recovery:  (1) the IRS agreed to terminate the levy on Mr. Kennedy's social security benefits and to refund him $5,200.80 (and, thus, it must pay him the money he seeks); (2) the IRS's refusal to re-issue the 2019 and 2010 checks was unlawful (because Mr. Kennedy had a property interest in the money); and (3) the USPS improperly closed Mr. Kennedy's P.O. box.  This Court finds that the counts associated with the first two theories of recovery either fall outside this Court's jurisdiction or fail to state a claim upon which relief may be granted.  Only one claim, related to the third theory — that the USPS improperly closed Mr. Kennedy's P.O. box — falls within this Court's jurisdiction and is sufficiently pled.

### A. Mr. Kennedy Fails to Allege Facts Demonstrating that He Entered into an Enforceable Agreement with the IRS to Terminate the Levy on his Social Security Benefits

Mr. Kennedy alleges that "[t]he IRS agreed to stop the levy [on his social security benefits] as of January 2019."  Compl. ¶ 3.  He advances four claims against the government based on this alleged agreement.  The first is an implied contract claim, *i.e.*, that the IRS entered into an implied contract with Mr. Kennedy to stop the levy and therefore owes him damages resulting from the continuation of the levy by the SSA (Count II).  *Id.* at ¶¶ 31-35.  The second, similar claim is for "account[s] stated," essentially alleging that the government agreed to refund the alleged overpaid levy via the 2019 checks (Count III).  *Id.* at ¶¶ 36-40.  The third and fourth claims both concern the SSA's continued levy of his benefits after his January 2019 conversation with the IRS (Counts V and VI).  The implied contract claim (Count II) and the account stated claim (Count III)

5

must be dismissed because Mr. Kennedy has failed to plead sufficient facts to establish the elements of either claim. Counts V and VI— the unlawful levy and takings claim against the SSA — must be dismissed because this Court lacks jurisdiction to consider them.

### 1. Mr. Kennedy fails to plead facts alleging an implied-in-fact contract

This Court has long recognized that in order to "establish that the government intended to bind itself in contract, a plaintiff must provide 'something more than a cloud of evidence that could be consistent with a contract.'" *Harlem Globetrotters Intl. v. United States*, 168 Fed. Cl. 31, 39 (2023) (quoting *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003)). When a plaintiff, as here, claims that the government breached an implied-in-fact contract, he must plead non-conclusory *facts* demonstrating four elements: (1) mutuality of intent to contract; (2) consideration; (3) unambiguous offer and acceptance; and (4) that the government representative whose conduct is relied upon has actual authority to bind the government in contract. *Fairholme Funds, Inc. v. United States*, 26 F.4th 1274, 1293–94 (Fed. Cir. 2022) (citing *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990)).[2] Additionally, alleged contracts to settle a disputed tax liability are not binding unless they comply with the Internal Revenue Code ("I.R.C."). *Brach v. United States*, 443 F. App'x 543, 548 (Fed. Cir. 2011) ("Purported agreements [to settle tax liabilities] that do not meet [I.R.C.] requirements are not enforceable as contracts binding the IRS."); *cf. Botany Worsted Mills v. United States*, 278 U.S. 282, 288–89 (1929) ("We think that Congress intended by the statute to prescribe the exclusive method by which tax cases could be compromised, . . . and did not intend to intrust [sic] the final settlement of such matters to the informal action of subordinate officials in the [IRS].").

Count II of Mr. Kennedy's second amended complaint fails because he has not sufficiently pled non-conclusory allegations that the United States entered a contract with him based on the January 2019 conversation he had with the IRS. In particular, he has not alleged that the IRS employees with whom he spoke had actual authority to bind the government in contract. Mr. Kennedy avers that he had a series of phone calls with unnamed IRS employees who allegedly agreed to stop the levy. But to survive a motion to dismiss pursuant to RCFC 12(b)(6), Mr. Kennedy also needs non-conclusory *factual*

---

[2] "An implied-in-fact contract is one 'founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'" *Fairholme Funds*, 26 F.4th at 1293 (quoting *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998)).

allegations that such employees were authorized to bind the government in contract. *OPM v. Richmond*, 496 U.S. 414, 420–33 (1990) (explaining that the government is not estopped by the unauthorized acts of its agents); *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1433 (Fed. Cir. 1998) ("[A]gency procedures must be followed before a binding contract can be formed."); *Schism v. United States*, 316 F.3d 1259, 1284 (Fed. Cir. 2002) (holding that "the government is not legally bound to abide by" promises made by government officials who "lacked actual authority" to make them, "meaning the parties never formed a valid, binding contract" (citing *Richmond*, 496 U.S. at 416–17)). Mr. Kennedy fails to allege any facts that could allow this Court to reasonably conclude that the IRS employees had actual authority to bind the government in contract. Because Mr. Kennedy's complaint lacks this critical element, it fails to demonstrate all the requisite elements of a binding contract.

Further, even if Mr. Kennedy could somehow show that these employees *did* have the requisite authority (and that the other implied-in-fact contract elements were met), the relevant contracting process for tax claims would still render the putative contract non-binding. In establishing the procedures for "closing agreements" regarding an individual's tax liability, the I.R.C. authorizes "[t]he Secretary [of the Treasury]" to "enter into an agreement *in writing* with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period." 26 U.S.C. § 7121(a) (emphasis added). Mr. Kennedy does not even attempt to allege that the requirements of that statute have been met here. Nowhere in his complaint does Mr. Kennedy point to a written agreement with the Secretary (or his or her authorized representative). *Cf. Harbert/Lummus*, 142 F.3d at 1434 ("In the absence of such a writing, the [contracting officer] could not have properly demonstrated his acceptance of the contract."). Given the lack of non-conclusory factual allegations demonstrating the existence of a binding contract between the IRS and Mr. Kennedy — let alone one in compliance with the I.R.C. — this Court dismisses Count II pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted.

### 2. Mr. Kennedy fails to plead facts alleging an account stated claim

An account stated claim is "based on the common law concept that an implied contract arises when a debtor (the [Internal Revenue] Service) submits to a creditor (the taxpayer) a statement of the final balance due on an account and the creditor agrees to accept the proposed balance to close the account." *W. Publ'g Co. Emps.' Preferred Stock Ass'n v. United States*, 198 Ct. Cl. 668, 675 (1972). Account stated claims are uncommon,

7

but they generally arise when the IRS "volunteers to abate a tax and informs a taxpayer that it intends to issue a refund," but ultimately "fails to issue such a refund." *Gerstein v. United States*, 56 Fed. Cl. 630, 633 (2003).  There are two elements of a well-pleaded account stated claim:  (1) the government agreed with the taxpayer that he overpaid a specific amount, and (2) the government clearly communicated its intention to repay the taxpayer.  *Brach v. United States*, 98 Fed. Cl. 60, 69 (2011) (citing *W. Pub. Co.*, 198 Ct. Cl. at 675); *see also W. Pub. Co.*, 198 Ct. Cl. at 676 ("The Supreme Court has been very strict in insisting that, before the concept of an account stated can be used, it be shown beyond peradventure that the Government has in fact agreed with, and communicated to, the taxpayer its intention to pay a stated sum." (citing *Daube v. United States*, 289 U.S. 367, 372 (1933))); *United States v. A. S. Kreider Co.*, 313 U.S. 443, 448–49 (1941) (holding that, even when the government had delivered a "certificate of overassessment" to the taxpayer, there was no account stated claim because the certificate alone was not an agreement to pay).  Furthermore, any ambiguity regarding the government's commitment to refund the taxpayer negates an account stated claim.  *See Baumgard v. United States*, 42 Fed. Cl. 301, 304 (1998) (holding that an account stated claim requires "a definite decision" in the taxpayer's favor, a showing of which is undermined by "provisional and tentative" or "qualifying" language).

Mr. Kennedy's account stated claim in Count III fails because it does not properly allege the first of the two elements of an account stated claim: the government's agreement with Mr. Kennedy that he overpaid a specific amount of taxes.  In his complaint, Mr. Kennedy alleges that unnamed IRS employees agreed to lift the levy, and that these employees "had actual authority to bind the government to the parties' agreement to stop the Levy."  Compl. ¶ 26.  But this allegation is entirely conclusory and, as explained above, runs contrary to established caselaw on the ability of government employees to bind the federal government.  *See Richmond*, 496 U.S. at 420–33 (refusing to hold the government liable for the unauthorized actions of federal employees); *Federal Crop Ins. v. Merrill*, 332 U.S. 380, 384 (1947) ("[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.").  As the government correctly contends, for Mr. Kennedy to bring a proper account stated claim, he must, but fails to, allege that a person *authorized to bind the government* agreed to pay him.  Def. MTD at 27.

The mere existence of the checks is also not enough to allege a proper account stated claim.  As the government points out, Def. MTD at 29, Treasury checks *per se* do

not constitute a binding obligation of the government to pay the person to whom the check is addressed. In that regard, 31 U.S.C. § 3328 ("Paying checks and drafts") addresses the "[a]uthority to decline payment," and provides: "Nothing in this section limits the authority of the Secretary to decline payment of a Treasury check after first examination thereof at the Treasury." 31 U.S.C. § 3328(f). The statute also permits the Secretary of the Treasury to "defer payment" on a check when it is "presented for payment" in the event "the Secretary is on notice of a question of law or fact about whether a Treasury check is properly payable." 31 U.S.C. § 3328(a)(2). In other words, to properly allege an account stated claim, Mr. Kennedy would have had to allege non-conclusory facts establishing an *underlying* agreement by the government to pay him, putting aside the checks; the mere existence of the checks cannot themselves give rise to an account stated claim.

The completed IRS Form 3911 does not help Mr. Kennedy, either. Mr. Kennedy *does* allege that he filled out the required forms, but the IRS employee's statements about what might happen if Mr. Kennedy were to fill out the forms are no more than "a routine response to a routine inquiry." *Gerstein v. United States*, 56 Fed. Cl. 630, 634 (2003). The mere fact that his request for a refund was received and that a check was issued is insufficient to support an account stated claim. Nor is a check an admission that the government owes money; estoppel by any other name cannot yield Mr. Kennedy a claim. *Richmond*, 496 U.S. at 434 ("As for monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds.").

Accordingly, this Court dismisses Count III for failure to state a claim.

### 3. This Court lacks jurisdiction to hear Mr. Kennedy's claims against the Social Security Administration

In Count V of Mr. Kennedy's complaint, he claims that the SSA unlawfully continued to withhold his social security benefits after the IRS agreed to lift the levy. Compl. ¶ 48. Mr. Kennedy quotes the Social Security Act for the proposition that "Social Security Benefits shall not 'be subject to execution, levy, attachment . . .'" except for "when such levy is done by the IRS." *Id*. at ¶ 49 (quoting 42 U.S.C. § 407(a)). He argues that because the "SSA's execution of the levy was contrary to IRS instructions," the SSA's actions violated this statute. *Id*. Similarly, in Count VI, Mr. Kennedy alleges that after he reached an agreement with the IRS to terminate the levy, "the entire amount of [his]

9

benefits were his property;" therefore, the SSA's continued "deduction of the levy after January 2019 constitutes a taking of his private property . . . without compensation." *Id.* at ¶¶ 50-51.

As the government correctly contends, however, this Court lacks subject-matter jurisdiction over claims against the SSA arising from the Social Security Act, 42 U.S.C. § 301 et seq.. Def. MTD at 33. In *Norman v. United States*, this Court explained:

> Even absent explicit proscription of this court's authority, . . . the Federal Circuit and the Supreme Court of the United States have frequently held that when "a specific and comprehensive scheme for administrative and judicial review is provided by Congress, the Court of Federal Claims' Tucker Act jurisdiction over the subject matter covered by the scheme is preempted."

126 Fed. Cl. 277, 280 (2016) (quoting *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001)); *see also, e.g.*, *United States v. Fausto*, 484 U.S. 439, 453–54 (1988) (holding that the Civil Service Reform Act precluded Tucker Act jurisdiction over plaintiff's claims). In other words, "the Tucker Act 'is displaced' when 'a law assertedly imposing monetary liability on the United States contains its own judicial remedies.'" *Maine Cmty. Health Options v. United States*, 520 U.S. 296, 325 (2020) (quoting *United States v. Bormes*, 568 U.S. 6, 12 (2012)).

This Court agrees with the government that claims pursuant to the Social Security Act, like Mr. Kennedy's claims in Counts V and VI, fall outside this Court's jurisdiction. Section 405(g) of the Social Security Act — the statute's section on judicial review — delineates the requisite processes for resolving claims against the SSA and provides, in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced . . .. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or

> have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

42 U.S.C. § 405(g).  Section 405(h) further provides:

> No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).  As the government correctly observes, Def. MTD at 34, the Federal Circuit has interpreted these provisions quite broadly to exclude all "[c]hallenges relating to social security benefits" from the subject-matter jurisdiction of this Court.  *Arunga v. United States*, 465 F. App'x 966, 967–68 (Fed. Cir. 2012) ("[T]he statute makes clear that the Court of Federal Claims lacks jurisdiction because claims for social security benefits must be filed in a federal district court."); *Marcus v. United States*, 909 F.2d 1470, 1471 (Fed Cir. 1990) ("[W]e hold that the Claims Court has no jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1988), over claims to social security benefits, even considering appellant's assertions that he is entitled to relief under the Constitution." (citations omitted)); *Peters v. United States*, 149 Fed. Cl. 781, 790 (2020) (collecting cases).  Mr. Kennedy's claims in Counts V and VI fall into this very category — they are "challenges relating to social security benefits" withheld by the SSA and explicitly excluded from this Court's jurisdiction by 42 U.S.C. § 405(h).  *Arunga*, 465 F. App'x at 967–68; Compl. ¶¶ 46, 49, 51.  Accordingly, Count V and Count VI are dismissed for lack of subject-matter jurisdiction.[3]

---

[3] In Count VI, Mr. Kennedy claims that the SSA's continued levy of his social security benefits constitutes a violation of the Takings Clause of the Fifth Amendment. Compl. ¶ 51. To the extent this claim alleges that the SSA wrongfully withheld his social security entitlements, this Court lacks jurisdiction for the reasons just explained above.  And to the extent this claim alleges that the SSA's cooperation with the IRS's levy on his benefits constitutes a taking, Mr. Kennedy has failed to allege facts that properly state a Fifth Amendment takings claim. *See infra* Section III.B.2.

### B. The IRS's Refusal to Re-Issue the 2010 and 2019 Checks Was Not Unlawful

Mr. Kennedy's second theory of relief (to include Counts I and IV) is that the IRS was required to re-issue the 2010 and 2019 checks. Mr. Kennedy claims that the IRS's failure to re-issue the checks is a compensable taking of his property, or alternatively, that it is an unlawful levy. Compl. ¶¶ 29, 42-43. But time has long since run out on these claims. Section 3702(c)(1) of Title 31 of the United States Code sets a one-year statute of limitations for all claims regarding the re-issuance of Treasury checks. Further, Mr. Kennedy does not have a cognizable property interest in the Treasury checks at issue, and he has not stated a valid claim for an unlawful levy. Thus, as explained below, his takings claim in Count I, and his "unlawful levy" claim against the IRS in Count IV, fail.

#### 1. Mr. Kennedy's claims related to Treasury checks are time-barred

Section 3702(c) of Title 31 of the United States Code provides the following statute of limitations for claims regarding Treasury checks:

> (c) One-Year Limit for Check Claims.—
>
> (1) Any claim on account of a Treasury check shall be barred unless it is presented to the agency that authorized the issuance of such a check within 1 year of the date of issuance of the check or the date of this subsection, whichever is later.
>
> (2) Nothing in this subsection affects the underlying obligation of the United States, or any agency thereof, for which a Treasury check was issued.

31 U.S.C. § 3702(c)(1)–(2). In other words, where a claim merely asserts that a Treasury check must be re-issued (because, for instance, it never arrived at its destination), the claim must be brought within one year. Here, the checks in question were allegedly issued in 2010 and 2019, and the statute of limitations would bar a claim for their reissuance once 2011 and 2020 passed, respectively. Mr. Kennedy does not allege that he contacted the IRS regarding these checks until 2021. He did not file suit until 2023. Accordingly, his claim that the checks must be re-issued is time-barred.

Mr. Kennedy's argues that the word "it" in 31 U.S.C. § 3702(c)(1) refers to "a Treasury check," and thus the statute's one-year clock does not begin until the *check* has been presented to the agency that authorized its issuance. Compl. ¶¶ 15, 35. He further asserts that the checks were "presented" to the IRS "by the USPS when they returned the checks to the IRS." *Id*. at ¶ 15. Alternatively, he argues that he made "a claim" for the checks when he contacted the IRS in April and June of 2019 to stop the levy of his social security benefits. *Id.* at ¶ 16.

Mr. Kennedy's strained reading of the statute is not supported by its text or by this Court's precedent. Indeed, the most natural reading of the statute is that the limitations period begins to run once the check has been issued. This reading is further supported by Treasury regulations, which establish the same requirement in slightly different language: "[a]ny claim on account of a Treasury check must be presented to the agency that authorized the issuance of such check within one year *after the date of the issuance* of the check." 31 C.F.R. § 245.3(a) (emphasis added). Furthermore, multiple cases from this Court and others interpreting 31 U.S.C. § 3702(c)(1) have understood the one-year requirement as beginning once the check was issued. *See Paalan v. United States*, 120 F. App'x 817, 822 (Fed. Cir. 2005) (holding that "[b]ecause [plaintiff's] claim was not brought within one year of the issuance of the checks in question," the "claim was time-barred"); *Am. Fuji Seal v. United States*, 34 Fed. Cl. 274, 277 (1995) ("Congress stated unambiguously that these claims must be 'presented to the agency that authorized the issuance of such check within 1 year after the date of issuance of the check. . . .'" (quoting 31 U.S.C. § 3702(c)(1))); *see also Rodek v. United States*, 962 F. Supp. 34, 36 (D. Del. 1997); *Smith v. United States*, 1997 WL 338853, at *1 (E.D. Pa. June 18, 1997). Mr. Kennedy's claims for the reissuance of the checks at issue are therefore untimely.[4]

### 2. Mr. Kennedy has no property interest in the lost checks

Because 31 U.S.C. § 3701(c)(2) makes clear that the one-year statute of limitations does not affect "the underlying obligation of the United States, or any agency thereof, for which a Treasury check was issued," this Court turns next to Mr. Kennedy's arguments about the IRS's underlying obligations to pay him.

---

[4] Mr. Kennedy's claim regarding the 2010 check may also be barred by the six-year statute of limitations applicable to Tucker Act claims. *See* 28 U.S.C. § 2501. It is unclear precisely what Mr. Kennedy views as the government's underlying obligation to pay him the amount allegedly covered by the 2010 check or when he knew or should have known about that alleged obligation to pay him.

13

In Count I, Mr. Kennedy argues that the IRS's refusal to reissue his checks constitutes a compensable taking of his property pursuant to the Fifth Amendment of the United States Constitution, which prohibits the federal government from taking private property for public use unless it pays just compensation. U.S. Const. amend. V. This Court generally has subject-matter jurisdiction over Fifth Amendment takings claims. *See Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) ("It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act Jurisdiction."). When evaluating whether governmental action constitutes a taking, a court must first ascertain whether the plaintiff has identified a cognizable property interest subject to the taking, and, second, whether there was a compensable taking of that interest through the government's actions. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321–22 (2002); *Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004); *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1348 (Fed. Cir. 2013). Here, Mr. Kennedy fails to state a claim upon which relief may be granted because he has failed to plead non-conclusory facts that allege the existence of either required element of a takings claim.

*First*, Mr. Kennedy lacks a cognizable property interest in the corpus of money the refund check would have conveyed if cashed. When the government possesses discretion to extinguish an existing property interest, or the interest is subject to revocation by the government, a plaintiff cannot have a Fifth Amendment takings claim for that contingent interest. *Campbell v. United States*, 134 Fed. Cl. 764, 778 (2017) ("[A] highly contingent property interest is not afforded the protections of the Takings Clause."); *Conti v. United States*, 291 F.3d 1334, 1342 (Fed. Cir. 2002) ("The absence of crucial indicia of a property right, coupled with the government's irrefutable retention of the right to suspend, revoke, or modify [plaintiff's] permit, compels the conclusion that the permit bestowed a revocable license, instead of a property right.").

Mr. Kennedy's interest in the 2019 checks is, at most, a contingent property interest. As explained above, *supra* Section III.A.2, pursuant to 31 U.S.C. § 3328(a), the Secretary has the authority to refuse payment on any Treasury check for a variety of reasons (*e.g.*, if the check remains outstanding for more than 12 months after issuance, or if there is a question of law or fact as to whether the check is properly payable). The Secretary also has the discretion to void any Treasury check. 31 U.S.C. § 3328(f). In other words, unless and until the checks are deposited and payment is made by the Treasury, the taxpayer does not have an unassailable right to receive the money — even if the check has already been signed and mailed. *United States v. Commonwealth Energy Sys. &*

14

*Subsidiary Companies*, 235 F.3d 11, 14 (1st Cir. 2000) (observing that Supreme Court precedent holds that taxpayers are "not entitled to the refund money until the date of payment" because the payment could be cancelled "even after a check was signed and mailed" (quoting *United States v. Wurts*, 303 U.S. 414, 417–18 (1938))); *see also United States v. McRee*, 7 F.3d 976, 981 (11th Cir. 1993) (rejecting the argument that "the government's property interest ceased as a matter of law upon [plaintiff's] receipt of the check" and holding that "the government at all times retained a property interest in the proceeds of the *erroneously* issued United States Treasury check" (citation omitted)); *cf. Constant v. Sabol*, 431 F. App'x 177, 179 (3d Cir. 2011) (explaining that plaintiff "failed to identify how the refusal to issue a check deprived him of a protected property interest for due process purposes"). Thus, the checks in this case are at best contingent interests subject to the government's approval, and they fail to constitute a cognizable property interest for a claim pursuant to the Takings Clause.

*Second*, Mr. Kennedy fails to allege a government *action* that amounts to a compensable taking of his property interests. The lawful exercise of the government's taxing power does not amount to a taking, *U.S. Shoe Corp. v. United States*, 296 F.3d 1378, 1383 (Fed. Cir. 2002); *Fry v. United States*, 72 Fed. Cl. 500, 509 (2006), and the government's tax levy was a lawful exercise of its taxing power. *Cf. Maehr v. United States*, 137 Fed. Cl. 805, 808 n.4 (2018) ("The Internal Revenue Code authorizes the Secretary of the Treasury to 'levy' property." (quoting 26 U.S.C. § 6331)). Therefore, any of Mr. Kennedy's claims regarding the impropriety of the levy must be addressed via a tax refund claim. *Artuso v. United States*, 80 Fed. Cl. 336, 338 (2008) ("A tax refund claim, with very few exceptions, is the only type of tax dispute over which this court has jurisdiction."). Nor does the IRS's decision declining to reissue certain checks constitute "government action" within the meaning of the Fifth Amendment. "[A] basic principle of our circuit's takings jurisprudence is that government inaction cannot give rise to a Fifth Amendment takings claim; rather, the government may be liable for an invasion of property only if the invasion results from an affirmative government act." *Johnson v. United States*, 2023 WL 1428603, at *5 (Fed. Cl. Jan. 31, 2023) (discussing Federal Circuit decisions). The non-issuance of checks is an inaction and thus does not give rise to a takings claim.

Accordingly, Count I is dismissed for failure to state a claim.

### 3. The IRS's failure to re-issue the checks was not an unlawful levy

Count IV of Mr. Kennedy's complaint essentially alleges that the IRS's refusal to re-issue the refund checks is equivalent to the IRS seizing Mr. Kennedy's property to fulfill a debt, in contravention of 26 U.S.C. § 6334(a)(5), which exempts "undelivered mail" from IRS levies. *See* Compl. ¶ 42–43; 26 U.S.C. § 6334(a)(5) (exempting "[m]ail, addressed to any person, which has not been delivered to the addressee"). Mr. Kennedy argues that the statute "should be construed, at a minimum, to authorize the return of the property wrongfully seized by the government." Pl. Resp. at 19.

There are two fatal flaws with Mr. Kennedy's argument: first, his own complaint fails to allege that the mail was not delivered. Indeed, he claims that the "USPS had disposed of or returned all his mail, including the 2019 checks," implying that the checks w in fact delivered. Compl. ¶ 9. Second, 26 U.S.C. § 6334 is not a money-mandating statute. Mr. Kennedy does not point to, and this Court cannot find, a provision of this statute that could be construed as mandating payment by the government. In fact, this Court has previously held that other sections of the same statutory framework are not money-mandating. *See McNeil v. United States*, 78 Fed Cl. 211, 227 (2007) ("[T]he court lacks jurisdiction to consider the merits of plaintiff's claim under 26 U.S.C. § 6331."); *Fry v. United States*, 72 Fed. Cl 500, 506 (2006) (same). Accordingly, this Court lacks jurisdiction to decide Count IV.

### C. This Court Lacks Jurisdiction over Mr. Kennedy's Bailment Claim Against the USPS, but Has Jurisdiction over His Breach of Contract Claim

Mr. Kennedy's third theory of liability is that the USPS failed to perform a legal duty — either arising under a bailment arrangement (Count VIII) or pursuant to an express contract with Mr. Kennedy (Count VII). As the government correctly argues, Def. MTD at 35, this Court lacks jurisdiction to hear bailment claims against the USPS for the mishandling of mail. This Court does, however, have jurisdiction over Mr. Kennedy's breach of contract claim in Count VII. Thus, the government's motion to dismiss is granted with respect to Count VIII, but denied as for Count VII.

#### 1. This Court lacks jurisdiction to decide bailment claims against the USPS

In Count VIII, Mr. Kennedy asserts that there was a "bailment contract between Kennedy and the USPS," Compl. ¶ 59, which was terminated "without notice" to him

when the USPS "closed his P.O. box and returned or discarded his mail." *Id.* at ¶ 62. He further contends that the termination of the bailment agreement caused "substantial damages, including the loss of the treasury checks issued by the IRS." *Id.* at ¶ 63. Though Mr. Kennedy frames this allegation as a breach of contract claim, the actual damages he seeks are for the alleged negligent or willful mishandling of the refund checks in his P.O. box. *Id.*; *see also Puget Sound Energy, Inc. v. United States*, 47 Fed. Cl. 506, 510 (2000) ("In construing the true nature of a claim we look to the real underlying claim, not how the plaintiff frames it.").

Such claims sound in tort law, over which this Court has no jurisdiction (irrespective of how the claim is framed or characterized). *Terry v. United States*, 99 Fed. Cl. 384, 390-91 (2011) (concluding that because "[c]laims for the mishandling of mail sound in tort, and not breach of contract, . . . the United States Court of Federal Claims does not have subject matter jurisdiction to adjudicate [them]" (citations omitted)); *Naskar v. United States*, 82 Fed. Cl. 319, 321 (2008) ("Because plaintiff's claim [against the USPS] is for damages due to negligence, it sounds in tort and the Court of Federal Claims does not have jurisdiction over it."); *Greene v. United States*, 169 Fed. Cl. 334, 338 (2024) (dismissing action because "[a] claim based on failure to deliver mail sounds in tort"); *Threatt v. United States*, 77 Ct. Cl. 645, 646 (1933) (characterizing claims based upon failure to deliver mail as "arising upon a tort and not upon a contract").

Accordingly, Count VIII is dismissed for lack of subject-matter jurisdiction.

### 2. Mr. Kennedy has alleged sufficient non-conclusory facts to support a breach of contract claim against the USPS

In Count VII, Mr. Kennedy asserts there was "an express contract between [him] and the [USPS] for the rental of a post office box." Compl. ¶ 52. He further alleges that he accepted the USPS's offer to provide a P.O. box by "paying the annual fee in full," *id.*, and that he "renewed the rental each year, paying with his debit card when he was contacted." *Id.* at ¶ 56. In support of this claim, Mr. Kennedy attached to his complaint an email from the USPS indicating that his credit card would be automatically charged for renewal of the P.O. box on March 31, 2020. *Id.* at Exhibit A. Mr. Kennedy essentially claims that the USPS breached its contract with him by closing his P.O. box — despite Mr. Kennedy's having paid for it — and as a result, he lost his IRS refund checks when they were returned to the agency. *Id.* at ¶ 58.

The government moves for dismissal of Count VII, arguing that it is merely "an allegation of bad customer service" masquerading as a breach of contract claim, Def. MTD at 37. The government cites *Allen v. United States* to support the general proposition that "rentals of post office boxes do not create a contract for purposes of the Tucker Act." Def. Rep. at 25 (citing *Allen*, 2022 WL 180760 at *4 (Fed. Cir. Jan. 20, 2022)). But the government overstates the *Allen* holding. In *Allen*, the plaintiff sought compensation for a panoply of alleged wrongdoing by the USPS. *Allen,* 2022 WL 180760 at *1. The Federal Circuit upheld the dismissal of Mr. Allen's claims, explaining that his "claims are akin to the type of customer service allegations that have previously failed to meet the elements of a valid contract for Tucker Act purposes." *Id.* at *2. But contrary to the government's reading, our appellate court did not hold that a rental agreement for the use of a P.O. box cannot ever constitute an enforceable contract. Rather, the Federal Circuit merely concluded that the plaintiff in *Allen* failed to plead sufficient facts to establish a valid contract. *Allen,* 2022 WL 180760 at *2 ("Mr. Allen does not allege facts supporting a valid contract[.]"). In other words, a rental agreement for the use of a P.O. box *could* constitute a contract assuming the necessary elements are established with facts; a claim that such an agreement was breached does not, therefore, necessarily sound in tort.

Unlike the plaintiff in *Allen*, Mr. Kennedy *does* claim — with facts — that he entered into an express and binding agreement with the Postal Service for the use of a P.O. box. Compl. ¶ 52. The attached correspondence with the USPS regarding the renewal of his P.O. box serves, at minimum, as presumptively probative evidence of such an agreement. *See id*. at Exhibit A. At least at this stage of the case, this Court treats the complaint's allegations and attached documents as asserting facts that, when assumed to be true, plausibly allege a breach of contract. That being the case, Mr. Kennedy may be entitled to monetary relief. Mr. Kennedy's breach of contract claim cannot be reduced to one for "bad customer service."

This Court can think of some other grounds upon which Mr. Kennedy's breach of contract claim may fail as a matter of law. But because the government does not move to dismiss Count VII on any other ground — and in light of Mr. Kennedy having included with his complaint evidence of a rental agreement between himself and the USPS — this Court sees no reason to dismiss his breach of contract claim *sua sponte* or at this time. Accordingly, the government's motion to dismiss Mr. Kennedy's complaint is denied with respect to Count VII.

## IV. CONCLUSION

Accordingly, the government's motion to dismiss is granted, in part, and denied, in part. Counts IV, V, VI, and VIII are **DISMISSED** pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction, and Counts I, II, and III are **DISMISSED** pursuant to RCFC 12(b)(6) for failure to state a claim.

With respect to Count VII, however, the government's motion is **DENIED.**

On or before January 12, 2026, the government shall file a status report, recommending an approach for how this case should proceed, including associated deadlines. Within 14 days of the government's status report, Mr. Kennedy may file a response.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Chief Judge
